Okay, the last case in the docket today is 9-59 Hess v. Loyd v. Carr. There's also what's been labeled an emergency motion for Lee to supplement. I'm not going to take any time with that right now. We'll take that matter with the case, I guess. I don't, quite frankly, understand what it's doing in the file. But anyway, it is, and we'll have to address it. Counsel, it's a great procedure. Long ago, the President of the Illinois Constitution wrote that every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property, or reputation. He shall obtain justice by law, freely, completely, and promptly. That's Article I, Section 12. That means that Mr. Hess has the right to recover damages against anyone that wrongs him, takes his property, ruins his reputation, interferes with his contracts, interferes with his liens, and he has the right to justice in the state of Illinois. Now, the legislature, obviously, has made a way for people to get rid of frivolous claims. So they enacted 6-15, saying if there's something wrong with a pleading, then a defendant can say, wait a minute, you're not even talking. But you haven't alleged anything that's against the law. Therefore, the judge can just dismiss the case. That's what 5-2, 6-15 is about. It is supposed to show some defect in the complaint, in the pleading, that it fails to allege some cognizable, cognizable cause of action in the state of Illinois. Instead, what the lawyers do here is they say, no, there is no contract. In other words, the plaintiffs make five counts, breach of contract, unjust enrichment, breach of promises, interference with liens, interference with the contract, and basically, really, a conspiracy with the Kanowski and the Bland and the Kanowski firm. So instead of saying, well, in this complaint, you don't really allege a cause of action, therefore, it should be dismissed, they say, no, there is no contract. They say, no, there is no unjust enrichment. They say, no, there is no interference with liens. They say, no, there is no interference with economic advantage or business advantage. I don't think that's what 6-15 was meant to do. It says very clearly, the motion must specify wherever the pleading or the division thereof is insufficient. They didn't do that. They just came in and said, well, there's not a contract there. Isn't that a factual issue? There's no unjust enrichment. Isn't that a factual issue? Well, there's no liens here. Isn't that a factual issue? How can you look at the face of the complaint, which the court must do, and construe every inference, not just the facts that are alleged in there, but every reasonable inference that can be drawn from there, has to construe them in the favor of the plaintiffs, and then say, well, there is no contract, therefore, it's dismissed with prejudice. I don't think the court had discretion to do that. They do not point out any defect. They just point out, they say, well, these aren't the facts. Now, what's the appropriate relief under 6-15? Well, the court can strike the pleading or abortion thereof. The court didn't do that. The court can dismiss the action, obviously, but it does say that the court is supposed to consider prior pleadings. The court, one month later, on July 17, 08, we filed a complaint. I filed a motion to amend the complaint, for leave to amend the complaint, on the 28th. The court didn't consider that this was my first crack at the complaint, at the lawyers, for alleging what they had done wrong to Mr. Hess. He just simply dismissed it with prejudice. He didn't strike any abortions of the complaint. He didn't even strike the complaint. He didn't even dismiss it with prejudice with, you know, 30 days to amend it. And, in fact, he refused to allow me to amend the complaint. And the law clearly says the court should consider prior pleadings that were attempting to correct the defect. He did not. Appropriate order, it must be an appropriate order under 6-15. Appropriate order means he can permit or require a pleading over, saying you did it wrong, we're dismissing this litigation, you've got to do it over again. He can allow the, to amend the pleadings, which he did not do. Of course, he can terminate the litigation, but nowhere does it mandate that it has to be with prejudice. But in violation of Article 1, Section 12, Judge Long gave my clients no remedy whatsoever, either in equity or in law, against the lawyers. I guess merely because they were his clients. The law is clear in the Bill of Morals. The court states very clearly that you can have a statutory lien, and even if you have a statutory attorney's lien, you can still sue your client for recovery. So there's no defect in the complaint. There's no defect pointed out in the complaint. If there's factual issues, then we should get discovery, we should be able to take depositions, we should be able to get answers to interrogatories, we should get requests for production, we should be able to establish the facts, and then come against a motion for summary judgment, I suppose they might want to file if they truly believe there was no contract, there was no unjust enrichment, there was no breach of promise, there was no interference with liens, there was no interference with economic advantage, or interference with the contract that Mr. Hess had with the Kanowski family. And there was no illegal conspiracy. So the court should have obviously allowed us to have discovery, and the court should have obviously allowed me to amend the complaint as I thought was appropriate according to the facts. Attached to the complaint was the contract between the Lloyds and the Kanowski associates. Yes, it was. And also attached to the complaint was there a contract between Kanowski associates and their then-associate, Mr. Hess. Yes. Now, I think that's some faulty logic. For some reason, people believe that because Mr. Hess had a contract with Mr. Kanowski and Kanowski and associates, and that Mr. Kanowski and Mr. Kanowski and associates interfered and did something wrong, that that would exempt the Lloyds from any wrongdoing. As everybody knows, a conspiracy, one act of one conspiracy is attributable to anybody. So if I hire somebody to rob a bank, and as they go in and they rob the bank, they break open the safe, they crack the safe, or they shoot somebody, all that misconduct is still attributable to me, whether I actually was the one that broke into the safe or not. So the fact that Mr. Hess had a contract with Kanowski and associates is proof that there was something the Lloyds could interfere with. Per our allegations that the Lloyds tortiously interfered with a contract. There's a contract in the complaint. Did Mr. Hess' contract with Kanowski and associates state that he was to work solely for Kanowski and associates? I don't remember that, Your Honor. I'll have to look at that. I don't remember that, but I believe he was. I don't believe it's moved because I don't believe he worked during his time there until he was wrongfully discharged. I don't believe he worked for anyone else. He had no separate contract with the Lloyds, though. Mr. Hess. Well, that is another point of confusion I'm glad you raised because Mr. Lloyd was the only one of the Lloyds that signed a written contract. Mr. Hess was the only attorney that had a relationship, attorney-client relationship, with Mrs. Lloyd from that point of view. She did not sign the written contract. So there can be an attorney-client relationship, I think it's very clear, without a written contract. And Mr. Hess, when he was discharged from the Kanowski law firm, he was still the attorney of record. He was still their attorney. A third party cannot terminate an attorney-client relationship. Just as you can't come in and tell my doctor, you know, somehow fire my doctor, I have to fire my doctor. And the law is clear. It's an Illinois law and practice that even if the attorney wants to withdraw, he has to inform the court. If the client wants to discharge the attorney, he has to inform the court because all the parties must know that there's been a separation of the attorney-client privilege. You don't want somebody taking a vacation or getting fired or something and all of a sudden they say, well I don't have any responsibility for that client. So Mr. Hess was responsible for both of the Lloyds, through the attorney-client privilege he had with them, whether he had a written contract with Kanowski and Associates or whether the Lloyds had a written contract with Kanowski and Associates. He was one of the associates for Kanowski and Associates in that contract, but he was also the attorney under Illinois law that represented the Lloyds and he was responsible for their case until such time as they terminated him, he withdrew, or the court recognized that there was no longer an attorney-client relationship there. Otherwise, attorneys could go on vacation and who knows, or they could get, a third party cannot terminate the attorney-client relationship. So Mr. Lloyd had a… Why wasn't the attorney-client relationship between the Lloyds and the law firm? What was what? Why was not, there was the attorney-client relationship between just the Lloyds and the law firm itself, that entity, the law firm? I cite there's a statute that goes back to whenever that makes it illegal for a corporation to represent that it represents clients or that it has clients. Because you can imagine what would happen if the corporation was the only entity that was responsible for a person. As far as the attorney, it's like saying a doctor. You have to have an individual human being that represents a client. A corporation does not. Now they can be sued under the Supreme Court rule, but… Do you think anybody in the law firm that would come in, let's say Mr. Hess was unavailable for motion hearing? Yes. Any other associate of that law firm then would have to file a notice, or have to file an inter-appearance and pay an inter-appearance fee before he or she could come in and argue the motion on behalf of the Lloyds. Is that what you're saying? No, I believe the court probably wouldn't hear him, but he could have an attorney-client relationship if he never entered his appearance. What was the inter-appearance? Was the inter-appearance for Mr. Hess individually or was it for the law firm of Kanowski and Associates or whatever the name is? He entered his appearance for the law firm of Kanowski and Associates, but he had an attorney-client relationship. And he never, in your positions, he never did withdraw individually. He never did withdraw. The Hesses never did firing, send them any letter or notify the court. Until after they got the notice of the lien. When they got the notice of the statutory lien, they discharged him in violation of the Supreme Court says you can't defeat a statutory lien by discharging. They didn't discharge Mr. Hess until after I sent them a letter. So again, my question, anybody in the law firm that would come in other than Mr. Hess to represent them would have to file their own inter-appearance and filing fees for the inter-appearance payout? I don't think so. Why not? Because you only require them to pay one fee. I thought you said that the corporation or the firm can't represent a person. It has to be a person in the firm. Exactly. A corporation cannot practice law. So therefore, Attorney A, another associate from the law firm, can't come in unless he enters his own appearance. Is that what you're saying? No, I'm not saying that because the law is clear that when you hire the law firm, Your Honor, you hire every single attorney in that law firm. So when somebody hires the Rexcar law firm, every single attorney in the law firm is their attorney right now, immediately. You don't have to have each person say, oh, by the way, I'm your attorney, by the way, I'm your attorney. The cases I have cited, and I can go back and get them for you, very clearly show that that is the case. And when they terminate that relationship with the law firm, it's your position that they still retain the right to come into all the pending lawsuits? No, if, and I understand your hypothetical, you're saying now, you're saying if the Lloyds had said to Kanowski and Associates, we no longer want any of your attorneys to represent us? No, I'm saying that if Mr. Hess had his employment relationship terminated with Kanowski, which he did, right? Correct. That cannot, I'm saying a third party, it's very clear, if you look at Illinois law practice, there's only a few ways to terminate the attorney-client relationship. A third party cannot terminate the attorney-client relationship, just like my doctor or lawyer. It's between, that's the whole point, that's why you can't say that the clients belong to the law firm. You're saying, we're talking over each other for some reason, I'm not making myself clear. The law firm and all the associates of the law firm entered their appearance on behalf of the Lloyds. When the first lawyer for that firm entered their appearance, all those attorneys represent the Lloyds. And if a person no longer works for the law firm, what effect, if any, does that have on his ability to continue to represent, or to appear in that case? Zero. He has to either tell that client, he has to call up the client and say, I no longer work for Kanowski and Associates, therefore I'm not going to work for you anymore, send a letter saying I'm withdrawing, and file a notice with the court. So the defense counsel, so the court and everybody knows they don't have to get noticed under the rules. Mr. Hess was still getting noticed from the defendants. You have, if somebody leaves our firm that represents a client, they have to notify that client they no longer represent them. Otherwise, how does the client know? Can you imagine how chaotic it can be? Do they have a right to not, do they have a right to continue representing them when they've hired the law firm? Do you have associates at the Rex Carlisle firm? Yes, we do. All right. And do they get assigned to represent people in personal incident cases? Yes, they do. And each time that happens, do they, let me just remind you this is being recorded, and each time that they represent one of your firm's clients, do they then have the right to file a lien against any settlement to collect money themselves out of that settlement? Your Honor, again, we're confusing the statutory lien with a lawsuit against the client. This is a case where Mr. No, no, no, I'm not. Okay, let's talk about the statutory lien. If you were to have a statutory lien with someone, the statutory lien Do they have a right to, do they have a lien against them? We have an associate in our office, her name is Mandy Williams. So if she represents a client and she sends a notice of lien to the other side, to the defendants, then what happens? That's not a cause of action against the client. That's not a cause of action against us. That's not a claim against us. That's not a claim against the client. It's a claim against the proceeds of the policy that say, look, you cannot settle this claim until I am paid on this case. And in your view, what are your associates have the right to do that? Yeah, the statute is very clear. It says attorneys at law doesn't say everybody except for associates. It says attorneys at law shall have a lien. It has to be that way. Otherwise, how could the defense counsel know that whether a person's an associate, a partner, a member of the defense lawyer has to know when that comes in? If it comes from Mandy Williams, how does that defense lawyer know whether that's an associate or what? So that the legislature set it up so that they have to protect that lien. The attorneys at law shall have a lien. Now, if there's no written contract, say Mandy had no written contract, then it's a quantum merit. She's entitled to get the amount of work that she did. But out of those proceeds, that's not about suing me to get her money. That's not about suing a client to get the money. That's saying, look, Mr. Defense Counsel, you know I've been taking the depositions. You know I got the expert witness opinions here. You know that I'm the one that prepared this complaint. You know I've got a lot of work on this case. And I'm the attorney of record in the case. You cannot settle this case until my lien is protected. Even if that associate is a salaried employee with a law firm and sole right to be paid for their work is through that salary? That's why there's a statutory lien. It's not a contractual lien, Your Honor. Sometimes things are so simple, maybe I can't understand. Right, it's a statutory. It's set up by statute. The one would be a contractual. She could sue me. I could sue her, maybe. Like, for example, the Hess contract. Let's talk about the way. Mr. Hess was entitled to receive all the proceeds, 100% of the proceeds. He just had to turn that over to the Konowsky Law Firm. Now, if Mandy Williams went out there and collected a third of her personal injuries she's working on and didn't put it all, turn it all over to the Rex Carr Law Firm, I could sue her for breach of contract. But the fact that I can sue her for breach of contract does not mean she does not have a statutory lien as an attorney of law that has attorney-client relationship. So the law firm doesn't have the right to do that? Exactly. The law firm only has a right to the, like, if we were to… The insurance company never sends a check to Client A and the Rex Carr Law Firm? No, you didn't let me finish, Your Honor. But, yes, of course they do. Because the Rex Carr Law Firm has the right to advance funds. If you read the law there where it talks about it's illegal to practice for a corporation to practice law, corporations can loan money. The Rex Carr Law Firm can advance funds. The Rex Carr Law Firm can refer it to me. The Rex Carr Law Firm, there are certain things it can and cannot do. But it's like it can't practice medicine and it can't practice law. It's a fiction. It's a fiction. And it has to be a human being that is ultimately responsible. The buck stops with me, not with the Rex Carr Law Firm. You know, the Rex Carr Law Firm can also… I can't hide behind that. That's why the Supreme Court allows you to sue the law firm as well because people were trying to hide from it. But that doesn't mean… Well, the law firm, you're saying, could never have a lien on any settlement proceeds. No, I said they can. They can? Of course they can. That's what I just said. I thought you just said it had to be a person, that a corporation couldn't do it. No, no, an attorney. The attorney's lien is for attorneys, Your Honor. That's what I'm talking about. But if the law firm advances money to a client, they also have a lien. Let's not talk about advance money. That's just like they want a claim against a settlement. No, I don't think the corporation cannot have an attorney's lien because it's not an attorney. It says attorneys at law. And then you read the statute where it says attorneys at law have the right to collect their fees. Mr. Hess is an attorney at law. He has a right to collect his fee because he's a licensed attorney in Illinois and Missouri. He has a right to collect a fee if he has a right to a fee. If he has a right to a fee. Yeah, no, that's a dispute. That wouldn't be, Your Honor. If 50 different attorneys at Jenner and Block work on a case, you're saying that there needs to be 50 different attorneys' liens filed? Of course not. Why would there have to be 50 different? No, I'm not saying that. I'm saying that any one of those attorneys that has an attorney-client relationship, if they automatically have that lien, now they perfect it. It says to enforce the lien. I can hit the statute and read it again. To enforce the lien. Go ahead. Make your thought. To enforce the lien, they send notice to the defendant. So if they're worried that their client might bypass them and settle it without them, or they're worried that somebody other attorney at Jenner and Block is going to take their money, certainly they can send a notice of a statutory lien. There are attorneys at law. They can send it to the defendant. And the defendants then will have to make sure there's not going to be two recoveries. Jenner and Block is not going to be, you know, all the attorneys are not going to be a third, a third, a third, a third. The court, of course, is going to apportion it according to as he sees fit. But if all those attorneys work on the same case, it doesn't matter if it's 100 attorneys. You know, each attorney at law has the right to tell the defendants, don't settle this case without respecting my lien. That's all we're saying, Your Honor. We're not saying they're going to be, you know, all the money is going to be taken away. You can talk to the federal counsel. Thank you. Counsel. I'm pleased to report I'm not presiding for the defendants. I apologize for the unorthodox version of the motion, Your Honor. If I could, I'd like to address why I thought what I did. Go ahead. I believe this court in October 15th last year had ruled on substantive issues that formed the basis for this lawsuit already. And, therefore, the Rule 23 is precedential. And, collaterally, it stops counsel from re-arguing, re-litigating the lien issue that we just spent 90% of the time arguing about. I don't want to spend a whole lot of time on it. I'm as far as any time. But for an emergency motion, I just don't understand. I know. And the only reason why that happened was it was a lapse of my firm and it was my fault. I don't even know if I need to file it. It's part of the record already. But my point being is that this issue has been the exact issue that the exact parties have been litigating just in October 15th. This honorable court not only ruled against Mr. Hess but also awarded sanctions against him under 375. I think the big picture here that counsel is actually advocating is that every lawyer, no matter where they're employed, if they touch a file, which is really all that's necessary to establish an attorney-client relationship, has a valid right to file a lien. And they don't. Just like Your Honor suggested, General Blight, you could throw a pebble in St. Louis or Chicago and not hit a corporation that practices law with 100 or more lawyers. And on defense or plain, every one of them under counsel's argument would be able to be entitled to have a lien right, despite the individual employment contract they may have with their employer. And that is not and has never been the law under this State of Illinois that I've seen. And I still see any cases or precedent for that argument. The case I cited in Pratt, and there's another case that we cited, is right on point. This is absolutely not exactly the case in Illinois. And I'm not going to re-argue those issues. What I want to talk about is the big picture. And the reason why this complaint was dismissed, or rather judgment, was granted on a plea, which is a remedy under 615. And Your Honor pointed out that not only was there a contingency fee contract between the Lloyds attached to the original complaint, and not only was there an employment agreement attached to the original complaint between Larry Hess and Konosky Associates, but there was also a verified petition by the Lloyds attached to that very complaint. A very fact-specific verification of indeed never having a contract or over-implied or in any other way with Mr. Hess. And indeed saying that they put their case in the hands of Konosky Associates and actually retained Konosky and Associates to prosecute their medical malpractice claim. Now, because of those verifications or verified facts that were attached to the complaint, the law is very clear. Any inconsistent facts that are alleged within the body of the complaint itself are overridden by those attachments. And I believe that Judge Long, when he looked at this motion for judgment on the pleadings, took that into consideration and looked at everything that was attached and awarded it or gave it sufficient weight. Of the 50-page or so complaint, my brief is wrong. I put 15 paragraphs only related to the Lloyds. I believe there were only seven paragraphs that related to the Lloyds. And in those seven, I believe most of those were impermissible legal conclusions or conclusions of law or ultimate fact. Of those, he just reiterated what was attached to the complaint, that there indeed was a contingency fee contract with Konosky Associates signed by Robert Konosky. Nowhere else in the house his name is in. And in fact, that the Lloyds had a personal injury-prone medical malpractice claim that was settled a year or so after he was terminated from his employment. The big picture is this. When that verified petition to adjudicate his lien, which is attached to the complaint, was heard, it was heard on July, rather, June 30, 2008, less than three weeks later, two weeks and three days later, the Lloyds were sued by Mr. Hess for this complaint. When I filed my motion in August for judgment on the pleadings, the only response that ultimately was put in writing by Mr. Hess was for Lee to amend the complaint not to allege different facts or to allege more facts or for Lee to re-plead, but rather to re-plead to bring in Ronald Konosky and Kent Blank. So he did not respond in writing at all to any of the arguments that we made for our judgment for the pleadings, but instead wanted to attach two new parties, where if he attempted to do that individually, and he has since done that, the venue would have been up in Springfield and not Montgomery County. So he sued the Lloyds after they filed this petition that simply stated that they never had a contingency contract with Mr. Hess and that they hired Konosky and associates, and once that was heard, they sued them for that, and then when I filed a motion for judgment on the pleadings for sanctions, the only written response was to add these two new parties. I don't remember, and we've had a lot of arguments in the Fourth District and in the Fifth District and a lot of arguments outside of this in the trial level, I don't remember any written pleadings in the record where counsel asked for Lee to re-plead. In the oral arguments, perhaps, but I don't remember that. I believe what ultimately Judge Long ruled on was the fact that after the motion was filed, Judge Long looked at what should be part of the record, a demand letter from counsel that offered to drop the case against the Lloyds in exchange for Konosky and associates and Mr. Blank to let go of half of their share of the attorney fees that were held in escrow at the circuit clerk at that point. Two people that were not parties to the case at that point, two people that the clerk had control of the attorney's fees that the Lloyds did not have. And I believe Judge Long took that into consideration when he ruled on the Supreme Court Rule 137 sanctions. That fee, by the way, has since, obviously, two months ago, since the last two months, was sitting in escrow for a period of years, just recently been released, and because that fee was released, this Court made its ruling. How can the Lloyds be held accountable for any unjust original when they were paid what they should have gotten paid under the contingency contract? How can they have interfered with business contracts or dealings with Mr. Hess when that was the sole basis of this complaint that was filed in this case? Counsel brought up conspiracy. I don't even know when that was ever alleged, except before today. My point being is that every count that Mr. Hess filed against the Lloyds, every single count is based upon whether or not Mr. Hess had a valid lien agreement or a statutory lien right against the proceeds of the settlement on the Lloyd v. Bilderman. If he did not, and I believe this Court has already ruled he did not, then the rest of these counts fall, and I believe that they are, he's gladly stopped arguing them, if not raised judicata-wise. I want to make sure I understand your statement. You're basically saying that Judge Long entered the sanctions based on the letter saying that I will drop this case if this particular dispersal is made. Is that correct? I handed that letter in oral argument to Judge Long who looked at it, and I believe Judge Long wasn't specific, but that was one of the things he took into consideration in addition to believing that it was a frivolous plea. Okay. So it was one of a number of factors. I believe it was. But he's not specific in his ruling. I didn't think he was. That's why I asked you about that statement. But looking at the big picture of why the Lloyds were sued, somebody who had Mr. Hess as a representative in court on behalf of Knostian Associates who would get a settlement, who would get then turned around and sued for all these counts with the only relationship, only conceivable relationship that is admitted in the exhibits attached to the complaint is this simple relationship between an employee of Knostian Associates and his duty to do his job to represent the Lloyds as Knostian Associates clients. That's it. There have been no other allegations of any other type of relationship between the Lloyds and Mr. Hess. If he has any allegations that are broad or generic allegations in his complaint, they're overridden by the verified statement by the Lloyds saying that is simply not the case. It never has been. Your Honors, I will rely on the remaining portion of my brief. And I'll waive it very importantly. Would you characterize the letter that was sent by Mr. Carr as an offer to settle? I do. How could that be a factor in 137 sanctions consideration? Well, I believe that the letter or offer to settle, demand to settle rather, would be a demand to settle, was contingent on two people who were not parties to the litigation to do so in exchange for dropping the litigation or the hardship against the Lloyds who were clients of Knostian Associates. And I believe seeing that and looking at that, there is no legal precedent for that. I can't, in one of my cases, go to the defense and say, well, if your brother or sister who are not a party here pays me or gives me a brand-new Camaro, I'll drop the case against you. It's not in good faith. The two parties that you're referring to are part of this overall transaction but not necessarily parties in this case. Is that correct? That's correct. Well, overall transaction, they have filed a lawsuit. There's a whole sequence of events. Yeah, they're involved. They were involved in the bilateral matter, well, to the extent that Kent Bland took over the bilateral case. Right. And Knostian Associates is involved. So they were actually involved in the overall transaction, though not necessarily in this case. So they are not total strangers to this transaction as an example. They're not total strangers. The fee, I believe, at that point was in the hands of the circuit clerk of the Montgomery County. No, I understand that. It was held in escrow as earning interest and everything else. But doesn't this sort of put a – if your argument that this is an appropriate factor in consideration of sanctions is correct, doesn't that somewhat put a damper on efforts to settle in a complicated case when obviously our jurisprudence says that if parties can settle and take some hold over their own future in litigation or potential litigation, we encourage them to do so? Well, I think in response to that, I do know, and I can't cite to you the case or the rule, but I do know that if I go into a room with a defense attorney and we have two separate cases, regardless if they're related parties or not or friends of each other or not, I cannot make one settlement contingent on another. I believe that's against the rules of professional conduct. I believe you're right on that. And I think that that's paramount to what we're looking at here, if not just outright harassment of the Lloyds at the expense of Knostian Associates and the Lloyds, obviously. I have not brought a formal motion for 375. I strongly urge the court to consider that. I believe the court has its own authority to do that. But I have nothing else. Thank you. Thank you. If you think something else is appropriate, I would suggest that you do what you think is appropriate. Pardon me, Judge? That if you think something else is appropriate, then I suggest that you do whatever you think is appropriate. Okay, yeah. And then I orally move that the court consider 375. We're not going to consider any oral motions is what I'm saying. I understand. I thought that's what you were saying. If what you're dancing around is some sanctions, put it in writing, let the other side get the opportunity to rebut it and let us hear from both of them. Thank you. Yes, I'd like to first just respond to that emergency motion, first off. There's no emergency, obviously. You're just saying, Maggie, he dispatched it to my office when I was already gone. You can see it's only been 15 minutes here. Then in response to what Judge Goldrich was kind of going into, he's trying to say it was something unethical to offer to settle. Now, if my client gets all of his damages, how can he continue against the court? If he is made whole, that's what we said, the Illinois Constitution allows my client to be made whole. Now, if Mr. Konowski is going to pay those damages and make Mr. Lloyd, as they're paying the attorney fees right now and he's representing the Lloyds right now, then if my client is made whole, then, of course, the case goes away. If there's no damages, you can't get dual recovery. So how could it be wrongful to try to settle the case, get the damages that Mr. Hess had suffered? If Mr. Konowski pays the damages that Mr. Hess has suffered, then how can we continue with the cause of action? So to me, from my viewpoint, it seems pretty absurd to say that it's some part of misconduct to try to settle a case to get the damages and then you're going to dismiss the lawsuit. Then the next thing is he's saying somehow it's collateral estoppel about the statutory attorney lien. There's two things here I want to clarify that everybody should understand from their mortgage. When you borrow money from a bank and you sign a mortgage, there's immediately a lien against that property. That bank doesn't have to do anything else to get a lien. It's done. It's already a matter of law. There is a lien there. And it's the bank that has the lien, not the people who work in the bank. 100 percent sure. Just as here, the corporation is the attorney of law that has the attorney lien, not the corporation. In the bank situation, it's the bank that has the mortgage, not the workers there. But under the Illinois attorney lien statute, it's attorneys at law that get the lien as soon as they represent a client. As soon as they touch a file, an attorney gets a statutory attorney's lien. That's what the Illinois law practice makes clear. That's what the case law makes clear. The second thing is to enforce it, to perfect it. So back to the mortgage situation. If the bank never records it, the bank still has a mortgage. There's still a mortgage there. So what the fourth district in this court did, my understanding was, Mr. Hess did not perfect the lien. Whether there was a perfected lien or not, whether you go down to the reporter's office and there's a mortgage perfected down there, while Mr. Hess worked for Kanowski & Associates, he did not perfect that lien. Now, I believe the case law is clear. It's while you represent a client, you perfect the lien. Apparently, this court believes that when Mr. Kanowski fired Mr. Hess, that automatically terminated the attorney-client relationship, and he could not perfect his lien. That's not what the order says. Nobody gave any case that says that. I don't think the case law says that. But in any event, when that mortgage company has the mortgage or signed the mortgage, there's a lien, whether they perfect it or not. The fact that Mr. Hess could not perfect his statutory lien can be proven to be the fault of the lawyers. The lawyers in their affidavit that is attached to the complaint say, no, we fired him ahead of time. Actually, as soon as they found out what Mr. Hess had to do to perfect his lien, they immediately said he didn't do that. So I believe the law requires Judge Long that he construe all of the facts, including what's attached to the complaint, in a light most favorable to the plaintiff. That would mean that that verified complaint were alleging that the lawyers were doing something improper there, trying to defeat Mr. Hess's statutory lien and trying to defeat his contractual lien that he had with the Kanowski firm, trying to defeat his equitable lien, his retaining lien, that the lawyers were trying to do something improper. Could you imagine a prosecutor that attaches perjury, some perjured transcript, and saying, oh, he's verifying that. Since he attached the perjured transcript, that means he can't prosecute him for perjuring. Mr. Hess is suing the lawyers because of the misconduct. That's why it was a few days after they signed that affidavit, because they perjured themselves in that affidavit. They interfered with his liens, his rights. And the Illinois Constitution makes it clear he has a constitutional right to a remedy in the courts of Illinois. If he's wrong. If he's wrong by that. And isn't that a factual issue? Surely there's been allegations he was wrong. Surely. Well, what's the significance of the prior case? What prior case? The one that we were up here on that Judge Goldenhurst wrote. Right. What? That is a case against the defendants. The statutory lien had nothing to do with the lawyers. We were not suing the lawyers. That is a claim for those funds that were in escrow. It's attached to the rest. It's like a foreclosure claim. Finish your thought, counsel. That is the clear. The statutory attorney's lien is different than the contractual lien and the other equitable liens that Mr. Hess had. That attaches to the proceeds of the settlement. When there's no proceeds, it doesn't attach. It can only attach to the proceeds of the defendant. Before there's a settlement in proceeds, the statutory lien can't even attach to anything. So that was a case all Mr. Hess did was send a letter to the defendants saying, you know, notice of this lien. Then it was Kanowski and Bland that filed the motions to try to adjudicate that lien and try to strike that lien. That was not Mr. Hess. Mr. Hess was suing the lawyers to collect his fee. So he's alleged to breach a contract, want to narrow it, unjust enrichment. He's led tortious interference with the statutory lien, with the equitable lien, with the retaining lien, with his contractual lien, and with his business advantage. So he should be given the opportunity to prove that, yes, he was wrong. He is at least alleged that. At least let him go to the jury or to at least some rejuvenated discovery and show that he was wrong. The complaint at least says that. And I believe the law requires every judge to believe every fact that's in that complaint is true. Thank you. Thank you, gentlemen, for your arguments. We'll take the matter under advisement and get back with you all. We'll be in recess. All rise. Thank you. Thank you. I don't know who this is. I don't know who left that. It's all good. We'll take care of it. This is the Air Force. All rise. Thank you.